IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN COPLEY, PAT MCGEENEY, JOE TILLEY,<br><br>             Plaintiffs,<br><br>     v.<br><br>EVOLUTION WELL SERVICES OPERATING, LLC,<br><br>             Defendant. | 2:20-CV-1442-CCW |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Evolution Well Services Operating, LLC's, partial Motion to Dismiss Plaintiffs Ryan Copley's, Pat McGeeney's, and Joe Tilley's Second Amended Complaint. *See* ECF No. 51. Defendant's Motion will be granted in part and denied in part.

**I.    Background**

The relevant factual allegations from Plaintiffs' Second Amended Complaint, ECF No. 46, are as follows: Plaintiffs were employed by Defendant, a company involved in the oil and gas industry, as electricians or equipment operators. *Id.* at ¶¶ 17, 19, 21. Plaintiffs worked at remote locations away from their homes in two-week-on, two-week-off "hitches," beginning on Thursdays. *Id.* at ¶ 30. Plaintiffs were required to live in housing that was provided by Defendant while working a hitch. *Id.* at ¶¶ 31, 38(a). During a hitch, Plaintiffs worked one twelve-hour shift each day, for a total of fourteen shifts worked per hitch. *Id.* at ¶¶ 32–33.

Defendant reimbursed Plaintiffs for their travel to the employer-provided housing at the remote work location—e.g., flight cost or mileage, plus a per diem—but did not compensate Plaintiffs for their time spent traveling. *Id.* at ¶ 35. Furthermore, Plaintiffs allege that Defendant did not compensate them for Plaintiffs' "travel time to employer-required orientation." *Id.* at ¶ 36.

Once at the remote work location for a hitch, Plaintiffs were not permitted to transport themselves to their assigned jobsite; accordingly, before each shift they were required to arrive at a Defendant-selected pickup location in order to be driven to the worksite (the "pad") in company-operated vehicles. *Id.* at ¶¶ 38(b)–39, 45, 51. These pickup locations were typically close to or on the premises of their employer-provided housing. *Id.* at ¶ 40. Before departing from the pickup location, Plaintiffs would often participate in fifteen-to-twenty-minute meetings with coworkers during which they would "take calls from supervisors, discuss the work that was to be completed that day, submit to random drug testing, and submit to daily temperature checks (after the beginning of the COVID-19 pandemic)." *Id.* at ¶ 41. The drive to and from the pad took at least an hour on average, and, during this time, Plaintiffs would engage in "work activities," such as "fielding phone calls from supervisors, discussing the tasks that needed to be completed during that day's shift, and picking up supplies from warehouses and stores for the work site." *Id.* at ¶¶ 42–43. According to Plaintiffs, this process repeated itself, in reverse order, after each shift at the pad. *Id.* at ¶ 44.

Plaintiffs further allege that they had an agreement with Defendant pursuant to which Defendant would pay them for the time spent traveling between the pickup point and the worksite. *Id.* at ¶ 48. Indeed, Plaintiffs allege that Defendant did in fact compensate them for this travel time until on or about March 12, 2020. *Id.* at ¶¶ 48–49. At that time, Defendant notified Plaintiffs that they would cease paying them for the time spent traveling to and from the work site and that the policy change would be backdated to March 5, 2020. *Id.* at ¶¶ 49–50. Defendant resumed paying Plaintiffs for this travel time at approximately the beginning of January 2021. *Id.* at ¶ 52.

Plaintiffs assert seven claims in this class and collective action: Count I alleges that Defendant failed to compensate Plaintiffs and all those similarly situated for all hours worked, in

violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). ECF No. 46 at ¶¶ 70–82. Next, Plaintiffs assert claims on behalf of themselves and Pennsylvania and Ohio state-wide classes for alleged violations of the Pennsylvania Minimum Wage Act ("PMWA") (Count II), Pennsylvania's Wage Payment and Collection Law ("WPCL") (Count III), the Ohio Minimum Fair Wage Standards Act ("OMFWSA") (Count V), and the Ohio Wage Prompt Pay Law ("OPPA") (Count VI). ECF No. 46 at ¶¶ 7, 9, 83–89, 90–96, 104–11, 112–18. Finally, Counts IV and VII assert unjust enrichment claims under Pennsylvania and Ohio law, respectively, on behalf of Plaintiffs themselves and the Pennsylvania and Ohio classes. ECF No. 46 at ¶¶ 97–103, 119–27.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*., and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under the notice pleading standard imposed by Federal Rule of Civil Procedure 8, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss").

### III.     Discussion

Plaintiffs' claims are based on multiple categories of allegedly uncompensated time: (1) travel from their homes to and from employer-controlled housing at remote work locations; (2) travel to required orientation; (3) daily pre- and post-shift activities, such as taking calls from supervisors related to work and picking up needed supplies; (4) travel to and from the pad each day; and (5) safety training.[1] Based on these categories of allegedly uncompensated time, Plaintiffs assert violations of federal and state law for unpaid wages (Counts I (FLSA), II (PMWA), and V (OMFWSA)); violations of state law for failure to timely pay wages allegedly owed (Counts III (WPCL) and VI (OPPA)); and claims in the alternative for unjust enrichment under state common law, again for unpaid wages (Counts IV (PA) and VII (OH)). In its Motion, Defendant

---

[1] Defendant's Motion does not seek dismissal of Plaintiffs' safety training-related claims. *See* ECF 52 at 9 n.4 (citing ECF No. 46 at ¶¶ 54–56).

seeks to dismiss Counts I, II and V in part, and Counts III, IV, VI, and VII in their entirety under Rule 12(b)(6). *See* ECF No. 51.

As a threshold matter, Defendant points out in its Reply that Plaintiffs have not opposed (or have withdrawn their claims) related to (1) travel to and from their homes to employer-controlled housing at remote work sites under the PMWA (Count II); (2) travel to orientation under the PMWA (Count II) and FLSA (Count I); and (3) "pure" gap time under the PMWA (Count II) and FLSA (Count I). *See* ECF No. 56 at 1. Plaintiffs have expressly withdrawn claims for travel away from home under the PMWA, *see* ECF No. 55 at 14 n.8, and, aside from one reference in their recitation of the factual allegations, they do not address travel to pre-employment orientation at all. *See* ECF No. 55 at 2. Next, with respect Defendant's arguments regarding Plaintiffs' "pure" gap time claims, Plaintiffs note that "[w]hile admittedly unclear in the Complaint, Plaintiffs affirmatively state they are not seeking pure gap time under the FLSA. 'Pure gap time' under the FLSA consists of uncompensated hours worked under 40 hours per workweek." ECF No. 55 at 6 n.5 (citing *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 244 (3d Cir. 2014)). Furthermore, Plaintiffs do not argue that their "gap time" claims encompass allegedly unpaid straight time wages for hours worked below the 40-hour overtime threshold. *See* ECF No. 55 at 6. As such, the Court understands Plaintiffs to have conceded that they do not seek compensation for any non-overtime hours (i.e. hours worked before reaching the 40-hour overtime threshold in a given workweek), but instead are pursuing only claims related to unpaid wages (including straight and overtime wages) for hours worked in excess of 40 in a given workweek.

Thus, because Plaintiffs have (1) failed to respond to Defendant's arguments regarding travel to pre-employment orientation; (2) conceded Defendant's arguments with respect to gap time; and (3) withdrawn their claims for travel away from home under the PMWA, Defendant's

5

Motion will be GRANTED in part.  Furthermore, because the OMFWSA "parallels the FLSA" and courts address OMFWSA and FLSA claims in a "unitary fashion," Plaintiffs' OMFWSA (Count V) claims will also be dismissed to the same extent as their FLSA claims.  *Hurt v. Commerce Energy, Inc.*, 973 F.3d 509, 517 (6th Cir. 2020) (citation omitted).  Accordingly, Counts I (FLSA), II (PMWA) and V (OMFWSA) will be dismissed, but only to the extent they allege violations based on (1) failure to pay "pure" gap time and (2) unpaid travel to pre-employment orientation.  Count II (PMWA) will be further dismissed to the extent it alleges a PMWA violation related to failure to pay for travel to the remote work locations.

> **A.  Plaintiffs Have Alleged Sufficient Factual Matter to State Claims under the FLSA and OMFWSA (Counts I and V) for Travel Time and Certain Pre- and Postliminary Activities**

Defendant argues that Plaintiffs' FLSA and OMFWSA claims for (1) travel from employer-controlled housing to the pad, (2) daily pre- and postliminary activities, and (3) travel to/from home and employer housing "fail as a matter of law because Plaintiffs do not plausibly allege that these activities either constitute compensable principal activities or are integral and indispensable to principal activities."  ECF No. 52 at 6.  The Court disagrees and concludes instead that Plaintiffs have sufficiently alleged violations of the FLSA and OMFWSA such that their remaining claims in Counts I and V may proceed into discovery.

To plead a claim under the FLSA,[2] allegedly unpaid time must be "compensable." Compensability of activities is generally established by one of the following showings:  (1) that the activities at issue are principal activities, (2) that the activities at issue are integral and indispensable to the employee's principal activities, or (3) that the activities at issue occurred

---

[2] The OMFWSA, Ohio Rev. Code § 4111.03, "parallels the FLSA" and courts address the matters in a "unitary fashion."  *Hurt v. Commerce Energy, Inc.*, 973 F.3d 509, 517 (6th Cir. 2020) (citation omitted).  As such, the Court will address Plaintiffs' FLSA and OMFWSA claims in tandem.

within an employee's "continuous workday." *See Smith v. Allegheny Techs., Inc.*, 754 Fed.Appx. 136, 139 (3d Cir. 2018); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) (explaining continuous workday rule) (citing 29 C.F.R. § 790.6(b)).

"A principal activity is an activity that the employee is 'employed to perform.'" *Smith*, 754 Fed.Appx. at 139 (quoting 29 C.F.R. § 790.8). "The term 'principal activities' includes all activities which are an integral part of a principal activity," such that they are "an intrinsic element" of a principal activity and "one with which the employee cannot dispense if he is to perform his principal activities." 29 C.F.R. § 790.8(b); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014). Activities that are integral and indispensable to a principal activity may include activities under the "shop time" rubric, such as "reporting to a designated meeting place, receiving assignments, and loading equipment." *Chao v. Akron Insulation and Supply, Inc.*, 184 Fed.Appx.508, 510 (6th Cir. 2006) (citing *Hodgson v. Am. Concrete Constr. Co.*, 471 F.2d 1183, 1185–86 (6th Cir. 1973)). Resolving "whether a certain task is a principal activity, or is integral and indispensable to a principal activity, is a fact-specific determination." *BI Inc.*, 2018 U.S. Dist. LEXIS 83901 at *35.

Next, some activities that are neither principal nor integral and indispensable to principal activities may still be compensable under the continuous workday rule. As such, non-principal activities performed between the first and last principal activity of an employee's workday may be compensable under the FLSA. *See* 29 C.F.R. § 790.6(b); *Wolford v. Allegheny Techs., Inc.*, No. 2:19-CV-00251-MJH, 2019 U.S. Dist. LEXIS 202140, at *7 (W.D. Pa. Nov. 21, 2019); *see also De Ascencio v. Tyson Foods, Inc.*, 500 F.3d 361, 370 n.8, 373 n.12 (3d Cir. 2007) (defining the continuous workday as "the period between the commencement and completion on the same workday of an employee's principal activity or activities" (citing 29 C.F.R. § 790.6(b)).

7

In sum, the question of whether a particular activity is compensable under the FLSA turns on a fact-specific inquiry into how closely linked the activity at issue is to a principal activity and whether it falls within an employee's continuous workday. *Compare Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956) (time spent sharpening knives found to be compensable because of direct connection to quality of meat-packers' work) *with IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005) (time spent waiting to don first piece of protective gear found non-compensable as being "two steps removed from the productive activity on the assembly line.").

Here, Plaintiffs plead that they were hired as electricians or equipment operators. ECF No. 46 at ¶¶ 17, 19, 21. Plaintiffs state that they were required to meet and wait at the Defendant-designated pickup location and that they were not permitted to drive themselves to the pad. *See id.* at ¶¶ 39, 45. Additionally, much like the shop time examples given in *Hodgson,* 471 F.2d at 1185–86, while waiting at the pickup location, Plaintiffs took phone calls with supervisors about the day's tasks and assignments and, while en route to the pad, picked up needed supplies from warehouses and stores. ECF No. 46 at ¶¶ 41, 43. Plaintiffs allege that this process repeated itself in reverse at the end of each shift. *See id.* at ¶ 44.

Given all this, while activities such as submitting to random drug testing and daily temperature checks may be "two steps removed from the productive activity" (i.e., work at the pad), *see IBP, Inc.*, 546 U.S. at 37; *see also* ECF No. 46 at ¶ 41, other activities that Plaintiffs engaged in before arriving at the pad—like fielding phone calls from supervisors and picking up supplies from warehouses or stores for the worksite—may be integral and indispensable to work at the pad. *See* ECF No. 46 at ¶¶ 41, 43; *see also Steiner*, 350 U.S. at 251; 29 C.F.R. § 785.38. Furthermore, depending on the sequence in which certain activities occurred, the continuous workday rule may operate to make compensable time that would otherwise not be. *See* 29 C.F.R.

§ 790.6(b). Thus, discovery is needed to determine the compensability of Plaintiffs' activities and the scope of their continuous workday.

Finally, "compensable travel time is not limited to 'hours worked on regular working days during normal working hours but also [covers travel] during the corresponding hours on nonworking days'" because "'[t]he employee is simply substituting travel for other duties.'" *Espinoza v. Atlas R.R. Contr., LLC*, 657 Fed.Appx. 101, 105 (3d Cir. 2016) (quoting 29 C.F.R. § 785.39). Plaintiffs allege that (1) they travelled away from home to employer housing at remote work locations, (2) they were not permitted to remain in employer housing at the conclusion of a hitch, and (3) they were not paid for travel to/from employer housing "regardless of when such travel occurred." ECF No. 46 at ¶¶ 30–31, 35–37. Accordingly, Plaintiffs have plausibly alleged that Defendant failed to compensate them for travel away from home as required under the FLSA.

Therefore, Defendant's Motion as to Plaintiffs' claims in Counts I and V for (1) travel away from home; (2) daily travel; and (3) pre- and postliminary activities will be DENIED.

### B. Plaintiffs Plead Sufficient Factual Matter to Support Their Remaining Claim for Unpaid Travel Time under the PMWA (Count II)

Defendant argues that Plaintiffs' claims for "unpaid travel to orientation, unpaid time spent traveling from Defendant's preselected meeting spot to Defendant's physical job sites, and unpaid time spent traveling to and from employer-controlled housing and remote work sites" fail because (1) Plaintiffs do not allege facts to support an underlying employment agreement, (2) the travel time to and from the work sites did not occur during normal working hours, and (3) none of the travel time—or activities performed during travel—were duties of Plaintiffs' employment. ECF No. 52 at 10. As addressed above, the Court will dismiss Plaintiffs' PMWA claims for travel to/from home and employer housing and for travel to pre-employment orientation; thus, the only PMWA travel claim remaining is for daily travel to/from the employer housing and the pad.

To determine whether travel time is compensable under the PMWA, courts look to whether such travel (1) was part of the employee's duties and (2) occurred during normal working hours. *See Smith v. Allegheny Techs., Inc.*, 754 Fed.Appx. 136, 140 (3d Cir. 2018) (citing 34 Pa. Code § 231.1(b)). Compensability of travel time under the PMWA is a fact-specific inquiry. *Morel Then v. Great Arrow Builders*, *LLC*, No. 2:20-CV-00800-CCW, 2021 U.S. Dist. LEXIS 7242, at *10 (W.D. Pa. Jan. 14, 2021). Indeed, the PMWA "requires compensation for a broader range of activities, including travel time, than the FLSA." *Smith*, 754 Fed.Appx. at 141; *see also Heimbach v. Amazon.com, Inc.*, No. 43 EAP 2019, 2021 Pa. LEXIS 3047, at *23 (Pa. July 21, 2021) (explaining that the PMWA does not incorporate the Portal-to-Portal Act's limitations on compensable activities).

Here, the fact that no formal employment agreements are in the record is not fatal to Plaintiffs' remaining PMWA travel claims. *See Smith,* 754 Fed.Appx. at 141. Furthermore, Plaintiffs plead facts consistent with the conclusion that the challenged travel time was a requirement of their employment. For example, Defendant required Plaintiffs to "report[] every morning to a designated pickup location determined by Defendant" to be "transported by Defendant to the location of the physical job site." ECF No. 46 at ¶¶ 38, 39. And, the activities Plaintiffs describe performing during travel to and from the pad—such as taking calls from supervisors and picking up needed supplies—are consistent with doing "work for Defendant." ECF No. 46 at ¶¶ 41, 43, 47; *see Espinoza*, 657 Fed. Appx. 101, 107 n.7 (3d Cir. 2016). Plaintiffs further allege that they had an agreement with Defendant that they would be compensated for this travel time. ECF No. 46 at ¶ 48. Given these allegations, Plaintiffs have sufficiently pled that daily travel to and from the pad was a duty of their employment. *See Smith*, 754 Fed.Appx. at 141;

*see also Heimbach*, 2021 Pa. LEXIS 3047 at *12–13 (construing "duty" in light of its plain meaning, i.e., "'a legal obligation that is owed or due to another and that needs to be satisfied.'").

Next, while the Third Circuit did not reach the question of what constitutes "during normal working hours" in either *Espinoza* or *Smith*, another court in this District to address the question has relied on Judge Roth's dissent in *Espinoza*. In that opinion, Judge Roth, analyzing the text of the PMWA and its implementing regulations, noted that "normal working hours" and "scheduled working hours" cannot be coextensive and opined that "'normal working hours' may include hours outside of an employee's actual scheduled shifts." *Espinoza*, 657 Fed.Appx. at 112–13. A Court in our District recently applied this analysis, and found that scheduled working hours "refer[s] to an employee's actual schedule of work," while "'normal working hours' may include hours outside of an employee's actual scheduled hours." *Smith v. Strom Eng'g Corp.*, Civil Action No. 19-147, 2019 U.S. Dist. LEXIS 198522, at *9 (W.D. Pa. Nov. 14, 2019) (Dodge, M.J.) (quoting *Espinoza*, 657 Fed.Appx. at 113 (Roth, J., dissenting)) (adopted as opinion of the district court, Civil Action No. 19-147 at ECF No. 26 (Hornak, C.J.)). Like the court in *Smith v. Strom*, 2019 U.S. Dist. LEXIS 198522, the Court finds Judge Roth's reading of "normal hours" under the PMWA to be persuasive and will apply it here.

Plaintiffs state that they worked one twelve-hour shift each day during a two-week hitch. ECF No. 46 at ¶¶ 32–33. These shifts appear to be Plaintiffs' "scheduled working hours." *See Smith v. Strom Eng'g Corp.*, Civil Action No. 19-147, 2019 U.S. Dist. LEXIS 198522, at *10–11 (W.D. Pa. Nov. 14, 2019). Plaintiffs travel to and from the pad each day appears to fall outside of their scheduled working hours, but within the ambit of their "normal working hours." *See* ECF No. 46 at ¶¶ 38–39, 41, 43. Thus, Plaintiffs plausibly allege both elements of their PMWA claim

such that Defendant's Motion on Count II will be denied with respect to claims for travel to and from the pad each day.

### C. Plaintiffs' Overtime Gap Time Claims under the FLSA and PMWA (Counts I and II) Will Survive

First, as noted above, the Court understands that Plaintiffs are not pursuing any claims for allegedly unpaid straight time wages for hours worked below the 40-hour overtime threshold—i.e. "pure" gap time. *See* ECF No. 55 at 6 n.5. Next, under Third Circuit precedent, "'in order to state a plausible FLSA [or PMWA] overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours.'" *Bansept v. G&M Auto.*, 434 F.Supp.3d 253, 258 (E.D. Pa. 2020) (quoting *Davis v. Abington Mem'l. Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014)).

Here, Plaintiffs plead that they worked fourteen twelve-hour shifts over the course of each hitch. *See* ECF No. ¶¶ 32–33. They also allege that they were not compensated "for time spent engaged in work while meeting at and traveling from Defendant's preselected meeting spot to Defendant's physical job sites, and vice versa," which "consists of several hours per week." Compl. ¶¶ 3–4, 32–33. Therefore, Plaintiffs contend that they (1) worked overtime every week that they worked and (2) were not properly compensated for hours worked in excess of the overtime threshold. Accordingly, Plaintiffs sufficiently plead facts to state a claim for unpaid straight and overtime wages under the FLSA and PMWA.

### D. Plaintiffs Sufficiently Plead the Existence of an Agreement for WPCL Claim to Survive (Count III)

Defendant argues that Plaintiffs' vague averment of an agreement between themselves and Defendant regarding proper wage compensation is not sufficient to state a WPCL claim. *See* ECF No. 52. The WPCL is meant "to provide protection to employees in the event an employer

breaches a contractual obligation to pay wages." *Alexander v. Smith & Nephew, Inc.*, No. 2:18-CV-01689-CRE, 2020 U.S. Dist. LEXIS 63436, at *13 (W.D. Pa. Apr. 8, 2020). "'To present a wage-payment claim,' the employee must aver a contractual entitlement 'to compensation from wages' and a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)). As such, a plaintiff pursuing a WPCL claim must "allege the existence of an employment contract . . . [or] at a minimum, an implied oral contract between the employee and employer." *Rui Tong v. Henderson Kitchen, Inc.*, No. 17-1073, 2018 U.S. Dist. LEXIS 176294, at *19 (E.D. Pa. Oct. 7, 2016). And, "[u]nder Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." *Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 578 (E.D. Pa. 2017) (citation omitted).

Here, Plaintiffs state that they were compensated for "the time spent traveling between the pre-selected pickup point to and from the work site" prior to March 12, 2020, at which time Defendant unilaterally changed this policy, backdating the change to March 5, 2020. ECF No. 46 at ¶¶ 48–50. According to Plaintiffs, Defendant then resumed paying for this travel time in the beginning of January 2021. ECF No. 46 at ¶ 52. Taking the alleged facts as true and construing them in Plaintiffs' favor, the Court concludes that Plaintiffs have sufficiently alleged facts from which the existence of an agreement to pay Plaintiffs for their daily travel can be inferred and that, from March 2020 to January 2021, Defendant failed to pay for that travel time. Therefore, Defendant's Motion with respect to Plaintiffs' WPCL claim (Count III) will be denied.

### E. Plaintiffs OPPA Claims (Count VI) Fail as a Matter of Law

Generally, a claim brought under the OPPA "rises and falls" with claims brought under the FLSA and OMFWSA. *Craig v. Bridge Bros. Trucking LLC*, No. 2:12-cv-954, 2015 U.S. Dist. LEXIS 189576, at *47 (S.D. Ohio Mar. 12, 2015), *rev'd on other grounds*, 823 F.3d 382 (6th Cir. 2016). However, the "OPPA 'does not apply to disputed wages.'" *In re Lowe's Cos.*, Civil Action No. 5:20-md-02947-KBD-DSC, 2021 U.S. Dist. LEXIS 20296, at *60 (N.D. Ohio Feb. 3, 2021) (quoting *Terry v. Pro-Mark Contracting, LLC*, No. 1:14 CV 2542, 2016 U.S. Dist. LEXIS 81074, at *17 (N.D. Ohio June 22, 2016)). As such, an OPPA claim is subject to dismissal where "the Complaint facially demonstrates the existence of a 'dispute accounting for nonpayment.'" *Sutka v. Yazaki N. Am., Inc.*, 256 F.Supp.3d 677, 683 (E.D. Mich. 2017) (discussing and applying OPPA).

Here, Plaintiffs plead the existence of such disputes on the face of the Second Amended Complaint by alleging, for example, that Defendant determined it would no longer compensate them for their daily travel or that Defendant paid mileage and a per diem (but not wages) for travel away from home. These allegations establish that Plaintiffs believe they are owed compensation for the disputed time under the law, but Defendant disagrees. *See, e.g., Sutka*, 256 F.Supp.3d at 683 (finding dispute and granting motion to dismiss where "Plaintiff alleges that Defendant 'classified him as FLSA-exempt, but that his primary duties were inconsistent with the exemption, thereby entitling him to overtime under the FLSA.'"). Accordingly, Count VI of Plaintiffs' Second Amended Complaint will be dismissed.

### F. Plaintiffs' Unjust Enrichment Claims under Pennsylvania and Ohio Law (Counts IV and VII) Will Survive

Pennsylvania and Ohio similarly define the elements for unjust enrichment claims as: (1) benefit(s) conferred on a defendant by a plaintiff; (2) appreciation or knowledge of the benefit(s)

14

by the defendant;  and (3) acceptance and retention of such benefits under such circumstances where it would be inequitable or unjust to do so.  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citation omitted);  *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F.Supp.3d 839, 868 (S.D. Ohio 2020) (citation omitted).

Plaintiffs sufficiently allege that Defendant retained the benefits of Plaintiffs' time and labor and that Defendant knew it was receiving such benefits, especially in light of the allegation that Defendant unilaterally decided to cease payment for daily travel time.  ECF No. 46 at ¶¶ 48–50, 99, 101, 123, 125.  Therefore, Defendant's Motion with respect to Counts IV and VII will be denied.

## IV.   Conclusion

For the reasons set forth above, Defendant's Motion is hereby GRANTED IN PART as follows:

a. Count I (FLSA) is dismissed to the extent it attempts to assert violations of the FLSA based on (1) "pure" gap time and (2) travel to pre-employment orientation;

b. Count II (PMWA) is dismissed to the extent it attempts to assert violations of the PMWA based on (1) "pure" gap time, (2) travel to pre-employment orientation; and (3) travel to and from employer-provided housing at the remote work locations.

c. Count V (OMFWSA) is dismissed to the extent it attempts to assert violations of the OMFWSA based on (1) "pure" gap time and (2) travel to pre-employment orientation;

d. Count VI (OPPA) is dismissed in full;  and

e. Otherwise, Defendant's Motion is DENIED.

For the sake of clarity, the Court notes that Plaintiffs' remaining claims are as follows:

a. Count I (FLSA) and Count V (OMFWSA), but only as to claims for (1) unpaid travel from home to remote work locations; (2) unpaid wages for pre- and postliminary activities; (3) the daily commute to the pad, to the extent such travel falls withing the Plaintiffs' "continuous workday;" and (4) time spent in mandatory safety training;

b. Count II (PMWA), but only as to claims for (1) unpaid wages for pre- and postliminary activities and (2) the daily commute to the pad, to the extent such travel is (a) a duty of Plaintiffs' employment and (b) within their normal working hours; and (3) time spent in mandatory safety training; and

c. Counts III (WPCA), IV (PA Common Law - Unjust Enrichment) and VII (OH Common Law – Unjust Enrichment).

IT IS FURTHER ORDERED that Defendant shall answer Plaintiffs' Second Amended Complaint on or before **August 17, 2021**.

DATED this 3rd day of August, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record