IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN COPLEY, PAT MCGEENEY, JOE TILLEY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| EVOLUTION WELL SERVICES OPERATING, LLC, | ) ) ) |
| Defendant. | ) ) ) |

2:20-CV-1442-CCW

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Conditional Certification under 29 U.S.C. § 216(b) filed by Plaintiffs Ryan Copley, Pat McGeeney, Joe Tilley, and Opt-In Plaintiff Brian Hanes (collectively, "Employees"). *See* ECF No. 75. For the reasons that follow, Employees' Motion will be GRANTED IN PART and DENIED IN PART.

**I.    Background**

    **A.    Procedural History**

Plaintiffs Mr. Copley, Mr. McGeeney, and Mr. Tilley filed their operative Second Amended Complaint on February 24, 2021, naming Evolution Well Services, LLC, and Evolution Well Services Operating, LLC, as defendants. *See* ECF No. 46. Plaintiffs voluntarily dismissed Evolution Well Services, LLC, without prejudice, on April 13, 2021. *See* ECF No. 50. The remaining defendant, Evolution Well Services Operating, LLC ("EWSO"), then moved to dismiss. *See* ECF No. 51. The Court granted in part and denied in part EWSO's motion. *See* ECF No. 59. EWSO filed an Answer, and the case then proceeded into discovery. *See* ECF Nos. 58, 59, and 66. While EWSO's motion to dismiss was pending, Mr. Hanes joined this action as an opt-in plaintiff. *See* ECF No. 57.

On October 29, 2021, the Court set a briefing schedule for Employees' Motion for Conditional Certification. *See* ECF No. 72. In accordance with that schedule, Employees filed their Motion, brief, and supporting exhibits. *See* ECF Nos. 75 (Motion) and 76 (Brief). Employees seek conditional certification of a putative collective under 29 U.S.C. § 216(b) defined as follows:

> All current and former rotational non-exempt employees who were employed by Defendant on or after August 25, 2017 and who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C.§ 216(b) (the "FLSA Collective").

ECF No. 75 at 1. EWSO has filed its opposition to Employees' Motion, *see* ECF No. 77, and, with the Court's permission, Employees filed a reply. *See* ECF No. 82. Employees' Motion for Conditional Certification is therefore ripe.

**B.     Relevant Factual Background**

The Court has previously summarized the relevant factual allegations put forward by Employees in the Second Amended Complaint. *See* ECF No. 58 at 1–3. In short, Employees are former non-overtime exempt hourly workers employed by EWSO. During their employment, Employees worked 14-day "hitches" at remote worksites during which EWSO required Employees to reside at EWSO-controlled housing. Employees worked one 12-hour shift each day of a hitch, not including time spent (1) in meetings and performing other tasks prior to departing for the worksite each day and (2) commuting from EWSO housing to the worksite (and back), during which Employees allegedly engaged in work-related activities. According to Employees, the commute took an average of three hours, roundtrip (i.e. 1.5 hours each way). Employees allege that EWSO failed to compensate them as required under the FLSA for certain categories of time spent traveling and performing work-related tasks. The following categories of allegedly unpaid

wages under the FLSA[1] survived EWSO's motion to dismiss and are relevant here: (1) "time spent traveling to the remote work location at the beginning and end of a hitch";  (2) "regular 15-20 minute meetings at the employer-controlled housing during which time calls and/or discussions with supervisors, temperature checks, and, occasionally, random drug testing were conducted"; and (3) "travel to and from the job site each day, during which time work-related activities were routinely performed."  ECF No. 76 at 5.

## II.     Standard of Review

Under the FLSA, an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). Although conceptually similar to a class action—in that it provides a mechanism for litigants to gather a number of individual claims into a single action—a collective action under Section 216(b) differs from a Rule 23 class action in a number of important ways.  *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 223 (3d Cir. 2016) (noting that although courts have borrowed "procedures, concepts, and nomenclature from the Rule 23 class action context…there remain important differences between a Rule 23 class action and a collective action").  Thus, because no "procedural rules [have] been promulgated to guide courts and parties in processing collective actions," *id.*, many courts (including our Court of Appeals) have adopted a two-step procedure for determining whether an FLSA lawsuit may proceed as a collective action.

At step one—which is the current posture of this case—a named plaintiff moves for what is known as "conditional certification."  "The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members."  *Id.* at 224

---

[1] Plaintiffs also assert a number of claims in Counts II–V of the Second Amended Complaint under Pennsylvania and Ohio law.  Those claims are not subject to conditional certification under the FLSA, and so are not before the Court on the instant Motion.

(quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  This is, therefore, "not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Id.* (citing *Zavala v. Wal-Mart Stores Inc.,* 691 F.3d 527, 536 (3d Cir. 2012)).  The bar for obtaining conditional certification is not a high one;  rather, plaintiff must "make a 'modest factual showing' — something beyond mere speculation — to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."  *Id.* (quoting *Zavala*, 691 F.3d at 536 n. 4).  At the conditional certification stage, the district court must determine "'whether "similarly situated" plaintiffs do in fact exist,'" and then the ultimate determination as to whether such opt-in plaintiffs are, in fact, "similarly situated" is reserved for the final certification/decertification stage.  *Zavala*, 691 F.3d at 536 n.4 (quoting *Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010)).

Finally, as relevant here to defining the proposed collective, under the FLSA, "[t]he applicable statute of limitations is three years for a willful violation, two years otherwise." *Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 U.S. Dist. LEXIS 43375, at *16 (E.D. Pa. Mar. 30, 2016) (citing 29 U.S.C. 255(a)).  However, the filing of the named plaintiff's complaint and consent-to-sue does not toll the statute of limitations for any opt-in plaintiffs;  rather, the statute of limitations for an opt-in plaintiff continues to run until his or her individual opt-in notice is filed.  *See* 29 U.S.C. § 256(b);  *Viscomi*, 2016 U.S. Dist. LEXIS 43375, at *17 ("The statute of limitations continues to run for potential members until they affirmatively opt in.") (citing *Symczyk v. Genesis Healthcare Corp*, 656 F.3d 189, 200 (3d Cir. 2011), *rev'd on other grounds Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013)).  A "violation of the FLSA [is] willful if, at minimum, the employer 'showed reckless disregard for the matter of whether its conduct was prohibited by the

[FLSA.]'" *Stone v. Troy Constr., LLC*, 935 F.3d 141 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988)).

### III.   Analysis

As noted above, Employees seek conditional certification under 29 U.S.C. § 216(b) of a collective action regarding the following allegedly unlawful policies or practices of EWSO:

> a) failure to compensate for time spent traveling to the remote work location at the beginning and end of a hitch;
>
> b) failure to compensate for regular 15-20 minute meetings at the employer-controlled housing during which time calls and/or discussions with supervisors, temperature checks, and, occasionally, random drug testing were conducted;  and
>
> c) failure to compensate for travel to and from the job site each day, during which time work-related activities were routinely performed.

ECF No. 76 at 4–5 (citations omitted).

EWSO concedes that Employees "have made a modest factual showing as to their claim for unpaid travel time between March 5, 2020 and January 1, 2021 to and from company housing to the job site," but maintains that (1) Employees' proposed collective is too broadly defined and (2) Employees "have not otherwise met their burden to show any unlawful policy or practice regarding non-payment of wages" for either (a) preliminary and postliminary activities "allegedly performed at the company housing or during the drive to the pad outside of the March 5, 2020 through January 1, 2021 timeframe" or (b) for travel from home to company-controlled housing. The Court will first address whether Employees have met their burden to make a "modest" factual showing with regard to pre- and postliminary activities and travel from their homes to EWSO-controlled housing before turning to whether Employees' proposed collective is appropriately defined.

5

### A.	Employees' Have Made the Requisite Modest Factual Showing

At the conditional certification stage, courts do not "consider the merits of the claim(s), decide credibility issues or resolve factual disputes." *Bonds v. GMS Mine Repair & Maint., Inc.*, No. 2:13-CV-1217, 2014 WL 2957394, at *4 (W.D. Pa. July 1, 2014) (McVerry, J.) (citing *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) (collecting cases)). This is because the district court's role is confined to an "'exercise of its discretionary power, upheld in *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, (1989), to facilitate the sending of notice to potential class members.'" *Dunkel v. Warrior Energy Servs.*, 304 F.R.D. 193, 199 (W.D. Pa. 2014) (Hornak, then-J.) (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012)).

"In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality [and]...must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174. Accordingly, while a defendant may ultimately prevail on the merits at a later stage of the case,

> unless is it patently clear that Plaintiffs cannot prevail as a matter of law…or that the commonality of generally applicable employment and compensation policies necessarily pales in comparison to individualized determinations of liability…an examination of the merits of the claims and defenses does not occur at [the conditional certification] stage of the proceedings.

*Stallard v. Fifth Third Bank*, No. 2:12-cv-01092, 2013 U.S. Dist. LEXIS 186531, at *9 (W.D. Pa. Dec. 12, 2013) (Hornak, then-J.) (citation omitted).  Thus, at the conditional certification stage, the Court looks at "whether 'similarly situated' plaintiffs do in fact exist." *Zavala*, 691 F.3d at 536 n.4.  If the plaintiff makes the modest factual showing to establish that this is so, "the court will conditionally certify the collective action for the purposes of notice and pretrial discovery." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) *rev'd on other grounds sub nom. Genesis HealthCare Corp. v. Symczyk,* 569 U.S. 66 (2013).

With this framework in mind, the Court concludes that Employees have met their burden to make a modest factual showing with regard to their claims for unpaid travel away from home and for daily pre- and postliminary activities. As to their claim for unpaid time spent traveling from home to EWSO-controlled housing, Employees' declarations state that "hitch employees" would arrive at the EWSO-controlled housing the day before the start of a hitch, that Employees provided their own transportation to the EWSO-controlled housing, and that, per EWSO policy, such travel time was not compensated. *See* ECF No. 82-1 ¶¶ 8–14; ECF No. 82-2 ¶¶ 8–14; ECF No. 82-3 ¶¶ 8–14; ECF No. 82-4 ¶¶ 8–14; and ECF No. 75-6. Similarly, Employees' declarations state that EWSO required them to meet in the lobby of the EWSO-controlled housing each day before departing to the work site; during these meetings Employees would participate in work-related meetings and undergo occasional drug testing and regular COVID screenings; that this pre-departure process could last anywhere from 10 to 30 minutes; and that EWSO did not compensate them for that time. ECF No. 82-1 ¶¶ 16–18, 36; ECF No. 82-2 ¶¶ 16–18, 35–36; ECF No. 82-3 ¶¶ 16–18, 36–37; ECF No. 82-4 ¶¶ 19–21, 31–32.

Against this showing, EWSO offers arguments that attempt to either contest the sufficiency of the Employees' factual showing or strike at the merits of Employees' claims. None of these arguments are persuasive. First, EWSO contends Employees' Motion should fail as to their claim for travel from their homes to EWSO-controlled housing because Employees' declarations do not specify the time of day they typically made these trips. ECF No. 78 at 5. EWSO claims this is a fatal deficiency because, under the applicable regulation, to be compensable, work-related travel that keeps an employee away from home overnight must "cut across the employee's workday." *Id.* at 4 (quoting 29 C.F.R. § 785.39). However, the declarations state that Employees would arrive on the "day" before the start of a hitch, and, furthermore, the Second Amended Complaint alleges

7

that the Employees worked 12-hour "day" (i.e. 6:00 a.m. to 6:00 p.m.) or "night" (i.e. 6:00 p.m. to 6:00 a.m.) shifts that varied by hitch "or by another period of time determined by" EWSO.  ECF No. 46 ¶¶ 33–34.  And, while EWSO denied in its Answer that Employees "always worked from 6 a.m. to 6 p.m. or from 6 p.m. to 6 a.m.," EWSO later states that "employees worked the same shift for each hitch and would rotate from day to night when they started a new hitch."  ECF No. 59 ¶¶ 33–34.  On the present record, therefore, it is not "patently clear" that Employees' travel did not "cut across" their workday.

Next, ESWO argues that because the compensability of such travel away from home is determined by the nature of the employment arrangement, the Employees' travel from their homes to EWSO-controlled housing was a "normal incident" of employment and therefore non-compensable.  ECF No. 78 at 5.  First, the Court notes that the regulation cited by EWSO provides that "[a]n employee who travels from home before his regular workday *and returns to his home at the end of the workday* is engaged in ordinary home to work travel."  *Id.* (quoting 29 C.F.R. § 785.35) (emphasis added).  It is undisputed that Employees did not "return[] to [their] home[s] at the end of the workday."  Rather, Employees traveled from their homes on a non-workday to EWSO-controlled housing before the start of a hitch, worked 14 consecutive days at a remote worksite while residing at the EWSO-controlled housing during the hitch, and then departed from the EWSO-controlled housing at the end of the hitch.  Furthermore, EWSO's support for this argument is based on case law that is either factually or legally inapposite, or both.  *See Davis v. Skylink Ltd.,* No. 3:11-0094, 2012 U.S. Dist. LEXIS 96766 (S.D. W. Va. July 12, 2012) (motion for summary judgment; no claim for travel that keeps employee away from home overnight); *Roman v. Tyco Simplex Grinnell*, No. 8:16-cv-3449-T-33AEP, 2017 U.S. Dist. LEXIS 125036 (M.D. Fla. Aug. 8, 2017) (motion to dismiss; no claim for travel that keeps employee away from

home overnight); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007) (motion for summary judgment; no claim for travel that keeps employee away from home overnight); *Ricard v. KBK Servs.*, No. 15-cv-299-jdp, 2016 U.S. Dist. LEXIS 120483 (W.D. Wis. Sep. 7, 2016) (motion for summary judgment; claim for extended travel, but not for travel requiring employee to stay overnight away from home); *Little v. Tech. Specialty Prducts, LLC*, 940 F. Supp. 2d 460 (E.D. Tex. 2013) (motion for summary judgment; claim involved alleged travel keeping employee away from home overnight, but defendant's motion granted because plaintiff failed to provide sufficient evidence to support his claim).[2]

It may be the case that EWSO is correct and Employees' time spent traveling from their homes to the EWSO-controlled housing is not compensable under the FLSA. But, at this juncture, it is not "patently clear" that Employees cannot prevail as a matter of law. *Stallard*, 2013 WL 12308493, at *3. And, as noted above, in resolving a motion for conditional certification, the court does "not consider the merits of the claim(s), decide credibility issues or resolve factual disputes at this stage of the case." *Bonds*, 2014 WL 2957394, at *4.

Finally, EWSO contends that Employees "offer no facts to suggest that they were similarly situated to other employees in the purported collective with respect to a practice that is alleged to violate the FLSA." ECF No. 78 at 9. Specifically, EWSO argues that Employees' Motion should fail because they have not pointed to other putative collective members with the same job titles, supervisors, or job expectations as Employees, nor have pointed to evidence that workers at other job sites in other parts of the country, or who rode from EWSO housing to the job site in different

---

[2] Indeed, of the cases cited by EWSO, in the closest factual analog to the instant dispute—*KBK Servs.*—the court noted that under 29 C.F.R. § 785.39, "when the employee is required to travel away from home to a place that requires an overnight stay, and that travel is made during work hours, then it is compensable time." 2016 U.S. Dist. LEXIS 120483, at * 14. Plaintiffs' claims in that case failed, however, "because their travel did not actually require an overnight stay, and their travel times did not cut across their work hours." *Id.* Although the Court does not address the merits of Plaintiffs claims at this juncture, we note simply that *KBK Servs.* seems to suggest the opposite conclusion from that urged by EWSO.

vehicles than Employees, "were subject to the same alleged common policy." *Id.* For example, EWSO points out that some employees may have slept on the drive to the work site rather than engage in work-related activities as alleged by Employees. *See id*. EWSO also argues that Employees have not offered evidence that any of the activities they engaged in before arriving at the work site were "integral and indispensable to a principal activity." *Id.* at 10. But Employees' declarations show that the alleged policy applied equally to workers in a range of job categories, and, by its very terms, EWSO's written Travel Policy appears to apply to all "Rotational Nonexempt Employees," regardless of specific job title, supervisor, or work site. *See* ECF Nos. 75-6 (EWSO's "Travel Policy—Rotational Nonexempt Employees"), 82-1 ¶ 1 (Mr. Copley worked as a "Low-Medium-Voltage Electrician"), 82-2- ¶ 1 (Mr. McGeeney worked as a "Medium-Voltage Electrician"), 82-3 ¶ 1 (Mr. Tilley worked as an "Equipment Operator"), and 82-4 ¶ 1 (Mr. Hanes worked as an "Electronics Technician"). And, in resolving EWSO's Motion to Dismiss, the Court has already determined that the activities Employees allegedly engaged in may be "integral and indispensable" to their principal activities. *See* ECF No. 58 at 8. Thus, while it remains to be seen whether Employees will be able to satisfy the more exacting "similarly situated" showing they must make at the final certification/decertification stage, for the purposes of the present Motion, Employees have met their burden.

Accordingly, because Employees have made the requisite "modest showing" for the three types of allegedly unpaid time at issue, the Court will grant conditional certification and authorize dissemination of notice to the putative members of the collective.

        **B.**     **Employees' Proposed Collective is Overly Broad**

EWSO advances two arguments in support of its position that Employees' proposed collective is overly broad in scope. First, EWSO argues that only some categories of rotational non-exempt employees were subject to the alleged travel policy. *See* ECF No. 78 at 8; *see also*

10

ECF No. 78-1 ¶ 5, 8 (Declaration of Elizabeth Karl, Director of Human Resources for EWSO, that "[t]he Travel Policy impacted the following categories of EWSO employees: (a) Data Van Operator, (b) Electronics Tech, (c) Equipment Operator, (d) Mechanic and (e) MV Electrician," and that certain other rotational non-exempt employees "were provided company vehicles to commute to and from the well sites and back and were paid for time spent driving from company provided housing to job sites and back even after the change in the Travel Policy."). Second, EWSO contends that, "[a]ssuming a willful violation" by EWSO, the proposed collective should be limited to the period December 2018-present, not August 2017-present as proposed by Employees, because the statute of limitations under the FLSA for a potential opt-in plaintiff's claim(s) continues to run until said opt-in plaintiff files his or her consent to join the action. *See* ECF No. 78 at 12.

As to the first reason to limit the scope of the proposed collective, Employees represent in their supporting brief that

> Defendant's counsel indicated to Plaintiffs' counsel that supervisory employees may have been compensated for their time spent traveling but have [sic] not provided evidence to support such assertions. If discovery reveals that this assertion is true, Plaintiffs will revise their collective definition at the second step of the FLSA certification process.

ECF No 76 at 2 n.1. Thus, the declaration provided by EWSO's Director of Human Resources supports the proposition that some employees were compensated for the time they spent traveling between EWSO-controlled housing and the work site, the Travel Policy itself appears to acknowledge that some employees would be compensated for commuting time, *see* ECF No. 75-6 ("Travel from company-provided housing to the jobsite is compensable, pursuant to company policy."), and Employees contemplate potentially amending their proposed collective definition if presented with appropriate proof. That said, because discovery is ongoing and because it is not clear from the face of the policy exactly which employees were or were not compensated for

11

commuting time, the Court will not exclude any categories of rational non-exempt employees from the proposed collective at this time. However, the parties may, as appropriate, amend the collective definition when submitting their proposed forms of notice (see below).

Next, as to EWSO's statute of limitations argument, the Court agrees with EWSO that the period of time proposed by Employees for the collective is overly broad. "The filing of the named plaintiff's complaint and consent-to-sue does not toll the statute of limitations for any opt-in plaintiffs; rather, the statute of limitations for an opt-in plaintiff continues to run until his or her individual opt-in notice is filed." *Wintjen v. Denny's, Inc.*, 2021 U.S. Dist. LEXIS 222676, at *49 (W.D. Pa. Nov. 18, 2021) (Wiegand, J) (citations omitted). Because the maximum look-back period under the FLSA is three years, the Court will limit the proposed collective to the period February 1, 2019 to present.

### C. Notice to Potential Opt-In Plaintiffs

For purposes of providing notice to potential opt-in plaintiffs, Employees request that the Court order EWSO to produce "[a] list, in electronic and importable format, of all members of the putative collective class, including their name, job title, address, email address, mobile telephone number, dates of employment, date of birth, and last four digits of their Social Security number." ECF No. 76 at 14. Employees argue that this information is necessary to identify potential opt-in plaintiffs and that e-mail and text message notice should be permitted because "[w]hile [potential opt-in plaintiffs'] mailing addresses may change, they are likely to retain their mobile phone number and email address. Dissemination of notice should reflect this factual dynamic." *Id.* EWSO, by contrast, requests "that the parties be ordered to meet and confer" to attempt to reach ana agreement "with respect to the appropriate scope of the employee information Plaintiffs seek and the proper means to communicate Notice and Consent Forms." ECF No. 78 at 13. Both

parties request an opportunity to meet and confer regarding a proposed form of notice to be distributed. *See* ECF No. 76 at 15; ECF No. 78 at 13.

Recently, in reviewing a similar disagreement about the categories of information to be produced by the employer and the means authorized for the distribution of the collective action notice, this Court found that "'it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers,'" but also decided production of social security numbers was unnecessary because the plaintiff's "request already seeks a number of pieces of personal identifying information for each potential opt-in, which should be sufficient for her counsel to appropriately direct notice." *Wintjen*, 2021 U.S. Dist. LEXIS 222676, at *55–56 (quoting *Belt v. P.F. Chang's China Bistro, Inc*., No. 18-3831, 2020 U.S. Dist. LEXIS 119283, at *26 (E.D. Pa. July 8, 2020). The Court sees no reason to reach a different conclusion here. As such, EWSO will be ordered to produce, within 10 days, the information requested by Employees, with the exception of social security numbers. Furthermore, the Court will authorize distribution of notice by mail, e-mail, and text message.

**IV.    Conclusion**

For the foregoing reasons, Employees' Motion for Conditional Certification under 29 U.S.C. § 216(b) is hereby GRANTED IN PART AND DENIED IN PART.

IT IS HEREBY ORDERED that a proposed collective consisting of "All current and former rotational non-exempt employees who were employed by Defendant on or after February 1, 2019 and who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C.§ 216(b)" is conditionally certified.

IT IS FURTHER ORDERED that the parties shall meet and confer regarding a proposed form of notice. The parties shall submit, on or before **February 10, 2022**, either an agreed upon form of notice or individual proposed forms of notice to the Court.

IT IS FURTHER ORDERED that, within 10 days of the Court's approval of the form of notice, EWSO shall produce, a list, in electronic and importable format, of all members of the putative collective class, including their name, job title, address, email address, mobile telephone number, dates of employment, and date of birth.

IT IS SO ORDERED.

DATED this 31st day of January, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record