## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN COPLEY, PAT MCGEENEY, JOE TILLEY, on behalf of themselves and others similarly situated, | Case No. 2:20-CV-01442-CCW |
| Plaintiffs, | Judge Christy Criswell Wiegand |
| v. | |
| EVOLUTION WELL SERVICES OPERATING LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
## <u>APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND AND STATUS OF THE LITIGATION ........................................... 2

SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT ..................... 3

   I.   The Proposed Settlement Class ............................................................................ 4

   II.  The Proposed Class Notice .................................................................................. 4

   III. Monetary Terms ................................................................................................... 5

   IV. Waiver and Release of Claims ............................................................................ 5

   V.  Proposed Schedule Following Preliminary Approval ...................................... 6

ARGUMENT .................................................................................................................. 7

   I.   THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY
APPROVED BY THE COURT .............................................................................. 7

      A.    Legal Standard for Approval of FLSA Settlements ............................... 8

      B.    Standard for Approval of Class Action Settlements ............................. 9

          1.    Complexity, Expense and Likely Duration Of The Litigation .............. 12

          2.    Reaction of the Class to the Settlement ............................................... 12

          3.    Stage of the Proceedings and the Amount of Discovery Completed ..... 13

          4.    Risks Of Establishing Liability and Damages ...................................... 13

          5.    Risks of Maintaining the Class Action Through Trial .......................... 14

          6.    Ability of Defendant to Withstand a Greater Judgment ....................... 14

          7.    Range Of Reasonableness of the Settlement Fund in Light of the Best Possible
Recovery and All the Attendant Risks of Litigation ............................ 15

   II.  THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO
THE CLASS ............................................................................................................ 17

   III. THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT
PURPOSES ............................................................................................................. 19

      A.    Rule 23(a) requirements are satisfied here ......................................... 20

          1.    Rule 23(a)(1) – Numerosity ................................................................. 20

          2.    Rule 23(a)(2) – Commonality ............................................................... 21

          3.    Rule 23(a)(3) – Typicality .................................................................... 22

          4.    Rule 23(a)(4) – Adequacy .................................................................... 23

**B.    The Proposed Settlement Class Should Be Certified Under Rule 23(b)** ................. **24**

**C.    The Release of FLSA Claims is Appropriate** ............................................................. **26**

**IV.  THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED** .................................................................................................................................. **26**

**V.   LYNCH CARPENTER LLP SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT COLLECTIVE/CLASS** ............................................................... **27**

**CONCLUSION** ........................................................................................................................ **28**

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Acevedo v. BrightView Landscapes, LLC,*
  2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ..................................................... 18, 19

*Altnor v. Preferred Freezer Servs., Inc.,*
  197 F. Supp. 3d 746 (E.D. Pa. 2016) .................................................................. 19

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................ 25

*Arrington v. Optimum Healthcare IT, LLC.,*
  2018 WL 5631625 (E.D. Pa. Oct. 31, 2018) ..................................................... 16

*Austin v. Pennsylvania Dep't o Corrsf,*
  876 F. Supp. 1437 (E.D. Pa. 1995) .................................................................... 11

*Baby Neal v. Casey,*
  43 F.3d 48 (3d Cir. 1994) ............................................................................. 22, 23

*Barnes v. Am. Tobacco Co.,*
  161 F.3d 127 (3d Cir. 1998) ............................................................................... 21

*Bernhard v. TD Bank, N.A.,*
  2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009) ......................................... 13

*Bonett v. Educ. Debt Servs.,*
  2003 WL 2168267 (E.D. Pa. May 9, 2003).................................................... 19

*Cohen v. Chi Title Ins. Co.,*
  242 F.R.D. 295 (E.D. Pa. 2007) ........................................................................ 21

*Contawe v. Crescent Heights of Am., Inc.,*
  2004 WL 2966931 (E.D. Pa. Dec. 21, 2004)..................................................... 22

*Craig v. Rite Aid Corp.,*
  2013 WL 84928 (M.D. Pa. Jan. 7, 2013)........................................................... 16

*Creed v. Benco Dental Supply Co.,*
  2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ................................................... 16

*Devlin v. Ferrandino & Son, Inc.,*
  2016 WL 7178338 (E.D. Pa. Dec. 9, 2016).................................................. 16, 18

*Dewey v. Volkswagen Aktiengesellschaft,*
  681 F.3d 170 (3d Cir. 2012) ............................................................................... 24

*Dino v. Pennsylvania,*
  2013 WL 4041681 (M.D. Pa Aug. 8, 2013) ........................................................ 8

*Ehrheart v. Verizon Wireless,*
  609 F.3d 590 (3d Cir. 2010) ........................................................................... 7, 8

*Eisen v. Carlisle & Jacquelin,*
  7 U.S. 156 (1974) ............................................................................................... 28

*Fein v. Ditech Fin., LLC,*
  2017 U.S. Dist. LEXIS 158479 (E.D. Pa. Sep. 26, 2017) ............................ 19, 28

*Flores v. Eagle Diner Corp.,*
  2019 WL 3943355 (E.D. Pa. Aug. 21, 2019) .................................................... 11

*Galt v. Eagleville Hosp.,*
  310 F. Supp. 3d 483 (E.D. Pa. 2018)........................................................... 11, 16

*Gaskin v. Pennsylvania*,
    389 F. Supp.2d 628 (E.D. Pa. 2005) ....................................................................... 11
*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008) ............................................................................ 10
*Gates v. Rohm & Haas*,
    265 F.R.D. 208 (E.D. Pa. 2010) ............................................................................ 21
*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .................................................................................. 10
*Howard v. Phila. Hous. Auth.*,
    197 F.Supp.3d 773 (E.D. Pa. 2016) ......................................................................... 8
*Ikon Office Solutions, Inc. Litig.*,
    191 F.R.D. 457 (E.D. Pa. 2000) ............................................................................ 23
*Ikon Office Solutions, Inc. Litig.*,
    209 F.R.D. 94 (E.D. Pa. 2002) .............................................................................. 13
*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................ 11, 25
*In re Centocor Secs. Litig. III.*,
    1999 U.S. Dist. LEXIS 1224 (E.D. Pa. 1999) ........................................................ 23
*In re Corel Corp. Secs. Litig.*,
    206 F.R.D. 533 (E.D. Pa. 2002) ............................................................................ 21
*In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................................. 8, 11, 14, 15
*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 14
*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ..................................................................... 12
*In re Linerboard Antitrust Litig.*,
    321 F. Supp. 2d 619 (E.D. Pa. 2004) ..................................................................... 16
*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) .................................................................................. 26
*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d (3d Cir. 1998) .................................................................................. Passim
*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997) ............................................................................... 27
*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ............................................................................ 15
*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .................................................................. 7, 10, 22, 23
*Jackson v. Southeastern Pennsylvania Trans. Auth.*,
    269 F.R.D. 168 (E.D. Pa. 2009) ............................................................................ 21
*Kraus v. PA Fit II, LLC*,
    155 F. Supp. 3d 516 (E.D. Pa. 2016) ..................................................................... 19
Lawson v. Love's Travel Stops & Country Stores, Inc.,
    2021 WL 720359 (M.D. Pa. Feb. 24, 2021) ........................................................... 16
*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) .............................................................................. 26

iv

*Mabry v. Hildebrant*,
   2015 WL 5025810 (E.D. Pa. Aug. 24, 2014) ........................................................ 19

*Murphy v. Hundreds Is Huge, Inc.*,
   2022 WL 2110202 (W.D. Pa. June 10, 2022) ........................................................ 8

*New Directions Treatment Servs. v. City of Reading*,
   490 F.3d 293 (3d Cir. 2007) ........................................................ 24

*Parks v. Portnoff Law Associates*,
   243 F. Supp. 2d 244 (E.D. Pa. 2003) ........................................................ 10

*Perry v. FleetBoston Fin. Corp.*,
   229 F.R.D. 105 (E.D. Pa. 2005) ........................................................ 13

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. June 26, 2012) ........................................................ 24

*Schaub v. Chesapeake & Del. Brewing Holdings*,
   2016 WL 9776070 (E.D. Pa. Nov. 14, 2016) ........................................................ 18

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ 17

*Schwartz v. Dana Corp.*,
   196 F.R.D. 275 (E.D. Pa. 2000) ........................................................ 22

*SEPTA. v. Orrstown Fin. Servs., Inc.*,
   2012 U.S. Dist. LEXIS 116937 (M.D. Pa. Aug. 20, 2012) ........................................................ 23

*Sheinberg v. Sorensen*,
   606 F.3d 130 (3d Cir. 2010) ........................................................ 24

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ........................................................ 12

*Solkoff v. Pa. State Univ.*,
   435 F.Supp.3d 646 (E.D. Pa. 2020) ........................................................ 8, 16

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ........................................................ 21

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ........................................................ 22

*Tompkins v. Farmers Ins. Exch.*,
   2017 WL 4284114 (E.D. Pa. Sep. 27, 2017) ........................................................ 18

*Tompkins v. Farmers Ins. Exch.*,
   2017 U.S. Dist. LEXIS 158478 (E.D. Pa. 2017) ........................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................ 22

## Statutes

29 U.S.C.§ 216(b) ........................................................ 1, 3, 27

## Rules

Fed. R. Civ. P. 23 ........................................................ *Passim*
Fed. R. Civ. P. 23(b)(3) ........................................................ 1, 25, 29
Fed. R. Civ. P. 23(e)(1) ........................................................ 28
Fed. R. Civ. P. 23(a) ........................................................ *Passim*

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 21
Fed. R. Civ. P. 23(a)(2) ................................................................................................ 22
Fed. R. Civ. P. 23(a)(3) ................................................................................................ 23
Fed. R. Civ. P. 23(a)(4) ................................................................................................ 24
Fed. R. Civ. P. 23(b) .................................................................................................... 25
Fed. R. Civ. P. 23(c)(2) ................................................................................................ 28
Fed. R. Civ. P. 23(e) ................................................................................................ 9, 10
Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................... 27
Fed. R. Civ. P. 23(g) ............................................................................................... 24, 29

## Other Authorities

H. Newberg & A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2009) .............................. 9
Manual for Complex Litigation § 21.62 ......................................................................... 10
Manual for Complex Litigation § 21.632-633 .................................................................. 10
Manual for Complex Litigation, §21.312 ....................................................................... 27
Manual for Complex Litigation, § 30.42 ........................................................................ 11

## INTRODUCTION

Named Plaintiffs Ryan Copley, Pat McGeeney, and Joe Tilley, as well as Precertification Opt-In Plaintiff Brian Hanes, and members of the conditionally certified collective and putative Ohio and Pennsylvania state wage and hour law classes (together "Plaintiffs") respectfully move the Court for preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in the Settlement Agreement ("Settlement Agreement" or "SA"). Plaintiff, with the consent of Defendant Evolution Well Services Operating, LLC ("Defendant"; together with Plaintiffs, the "Parties"), request that the Court enter an Order that would:

1) Grant preliminary approval of the proposed Settlement;

2) Certify, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the Pennsylvania Class and the Ohio Class pursuant to Fed. R. Civ. P. 23(b)(3), and grant final certification of the FLSA Collective pursuant to FLSA, 29 U.S.C.§ 216(b).

3) Set a date for the Final Approval Hearing[1]  no sooner than 90 calendar days after entry of the Preliminary Approval Order.

Plaintiffs' counsel, on behalf of Plaintiffs and the proposed classes of individuals, have negotiated a settlement of all claims against Defendant for alleged violations of the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA") and the Ohio Minimum Fair Wage Standards Act (OMFWSA). After lengthy, arms-length settlement negotiations, including two full-day mediation sessions before mediator Carole Katz, Esq., a significant exchange of employee data, the exchange of legal positions, and multiple calls and

---

[1] All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

emails amongst counsel, the Parties have reached a settlement. *See* Declaration of Elizabeth Pollock-Avery ("EPA Decl."), ¶¶ 17-18, 20-21. Defendant supports preliminary approval of the Settlement Agreement.

As set forth below, the Settlement satisfies all of the prerequisites for preliminary approval and certification of the proposed settlement collective and classes. The proposed Settlement is a fair, reasonable, and adequate resolution of the Action, balancing the risks each side would have faced had the Action continued against the benefits conferred by the Settlement. For these reasons, and those more fully articulated below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.

## BACKGROUND AND STATUS OF THE LITIGATION

Plaintiffs as well as Collective/Class Members worked as field workers for the Defendant, an oil and gas company. Plaintiffs worked fourteen day long "hitches," at a job site, during which they worked 12-hour shifts each day of the hitch. Plaintiffs lived in employer-provided housing during hitches. Plaintiffs allege that Defendant failed to properly compensate them and other field workers for time spent travelling from their homes to the remote work sites at the start of each hitch, and for time spent travelling from the employer-sponsored housing to and from their daily work sites, during which time employees regularly engaged in multiple work activities, including fielding phone calls from supervisors, discussing tasks to be completed during that day's shift, and picking up supplies from warehouses and stores.

On August 25, 2020, based on these alleged facts, Plaintiff Ryan Copley sued Defendant in the Allegheny County Court of Common Pleas. On September 25, 2020, the case was removed to the United States District Court for the Western District of Pennsylvania. No. 2:20-CV-01442-CCW, ECF 1. Plaintiffs filed their Second Amended Complaint ("SAC"), the operative complaint

in this action, on February 24, 2021. ECF 46. In their SAC, Plaintiffs and Collective/Class Members alleged that they worked numerous hours for which they were not compensated. Defendant vigorously denies each allegation and maintains that it complied with all applicable federal and state wage laws and regulations.

On November 17, 2021, Plaintiffs moved for conditional certification of a class of all current and former rotational non-exempt employees, under the FLSA (ECF 76), which was granted on January 31, 2022, conditionally certifying a "collective consisting of [a]ll current and former rotational non-exempt employees who were employed by Defendant on or after February 1, 2019, and who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C.§ 216(b)" (the "Collective") ECF 88 at 13.

Based upon the Parties' independent analysis prior to, during, and subsequent to two day-long mediation sessions before Carole Katz, Esq. ("Mediator")—a recognized mediator who is experienced in mediating wage and hour claims and other complex class actions—and recognizing the expenses and risks of continued litigation, the Parties entered into the Settlement Agreement. Counsel for Plaintiffs believe that Settlement with Defendant as set forth in this Settlement Agreement is fair, reasonable, and is in the best interests of Plaintiffs and Collective/Class Members, in light of all known facts and circumstances, including the risk of delay and defenses asserted by Defendant. Although Defendant denies liability, it likewise agrees that settlement is in the Parties' best interests.

## SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

The most important elements of the Settlement are set forth below, and a complete description of the terms and conditions of the Settlement are contained in the Settlement Agreement, and contemporaneously filed documents.

## I.     The Proposed Settlement Class

The Settlement Collective/Class consists of all members of the FLSA Collective, the PA Class, and the OH Class, who do not opt-out of the Settlement. SA § 1.28. The Collective[2] is comprised of current or former rotational non-exempt employee who previously submitted an opt-in form to become an Opt-In Plaintiff and assert federal Fair Labor Standards Act ("FLSA") claims in the lawsuit. EPA Decl., ¶ 53. Through the Settlement Agreement, the Parties stipulate to certification of the PA Class and the OH Class for settlement purposes only. *Id*. at ¶ 52. The PA Class is comprised of all current and former rotational non-exempt employees who were employed by Defendant, and who worked for Defendant in the Commonwealth of PA, on or after February 1, 2019 and who do not opt-out of the Action. *Id*. at ¶ 54. The OH Class is comprised of all current and former rotational non-exempt employees who were employed by Defendant, and who worked for Defendant in the State of Ohio on or after August 26, 2018, and who have not opted-out of the Action. *Id*. at ¶ 55. The Parties also stipulate to the final certification of the conditionally certified FLSA Collective, for settlement purposes only. *Id*. at ¶ 56.

## II.    The Proposed Class Notice

The Settlement Agreement provides for dissemination of Class Notice. The Class Notice will provide Collective/Class Members with all pertinent information regarding the Settlement as well as the contact information for the Settlement Administrator.

If the Court grants Plaintiffs' Motion, then within seven (7) calendar days after the Court enters a Preliminary Approval Order, Class Counsel will provide the Settlement Administrator

---

[2] Work performed under the following job codes were already compensated for the time at issue will not receive additional compensation under this Settlement: Electrical Field Service Supervisor, Electrical Field Supervisor, ET Field Supervisor, Field Supervisor, MV Field Supervisor, Service Supervisor, Turbine Operations Supervisor, Turbine Operator, and Turbine Operator Lead.

with a list, in electronic form, that has previously been provided to Class Counsel by Defendant, containing the following information for Plaintiffs and for each Collective/Class Member: name, last known address, last known telephone number(s), last known email address(es), Social Security Number, hourly rate of pay paid by Defendant, the overtime hourly rate paid by Defendant, number and location by state of shifts during the Closed Period, and number and location by state of hitches during the Home to Hitch Period. SA §4.5.

### III.     Monetary Terms

The proposed Settlement Amount consists of cash in the amount of Two Million Five Hundred Fifty Thousand U.S Dollars and No Cents ($2,550,000.00). SA § 4.1(A). In accordance with the Settlement Agreement, the Settlement Administrator shall make deductions from the Settlement Amount for court-approved attorneys' fees, reasonable litigation costs, expenses for the Settlement Administrator, and court-approved Service Payment for the Named Plaintiffs Ryan Copley, Pat McGeeney, and Joe Tilley, and Precertification Opt-In Plaintiff Hanes, in recognition of their early participation and substantial work and services they have contributed to the case. SA §§ 4.6(B)(2), 4.14(D). The amount remaining after these deductions (the "Settlement Amount") shall be distributed to Collective/Class Members in accordance with the formula for determining the "Settlement Payment" set out in the Settlement Agreement. SA §4.10.

### IV.     Waiver and Release of Claims

In exchange for the Settlement Amount and the other good and valuable consideration provided pursuant to the terms of the Settlement Agreement, the Collective/Class members, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to release and forever discharge Defendant as follows:

**Collective Members** release Defendant from all federal, state and local wage related claims that were alleged in the Litigation. By accepting payment as a Collective Member, each Collective Member acknowledges and agrees that they have been paid for all time worked and have received all other compensation and benefits owed to them. SA § 4.15(B).

**PA Class Members** release Defendant from all Pennsylvania state wage related claims that were or could have been alleged in the Litigation, including any claims pursuant to the PMWA, WPCL, and Pennsylvania common law that such PA Class Member has, had, might have or might have had against Defendant that in any way relates to any of the facts or claims alleged or that could have been alleged in the Action or by reason of the negotiations leading to this Settlement. SA § 4.15(D).

**OH Class Members** release Defendant from all Ohio state wage related claims that were or could have been alleged in the Litigation including any claims pursuant to the OMFWSA and Ohio common law that such OH Class Member has, had, might have or might have had against Defendant that in any way relates to any of the facts or claims alleged or that could have been alleged in the Action or by reason of the negotiations leading to this Settlement. SA § 4.15(C).

## V.     Proposed Schedule Following Preliminary Approval

1.      **Delivery of Class Information**: Within seven (7) calendar days after the Court enters a Preliminary Approval Order, Class Counsel will provide the Settlement Administrator with a list that has previously been provided to Class Counsel by Defendant, containing the information for Plaintiffs and for each Collective/Class Member in accordance with the Settlement Agreement. SA § 4.5.

2.      **Mailing of Class Notices**: The Settlement Administrator will mail the Notice Packet via First Class Mail to each Collective/Class Member  within fourteen (14) calendar days after the Settlement Administrator receives the class list and the data required to perform the preliminary calculations from Class Counsel. SA § 4.7.

3.      **Estimated Settlement Payments**: Ten (10) days before the Final Approval Hearing, the Settlement Administrator will certify jointly to Class Counsel and Defendant's

Counsel a list of all Settlement Class Members, indicating for each the total estimated Settlement Payment due to that individual. SA § 4.6(A)(6).

4.      **Opt-Out/Objection Date:** All Requests for Exclusion must be submitted by sixty (60) days after the mailing of the Notice Packets. SA at § 1.19.

5.      **Final Approval Hearing**: The Parties will jointly request that the Court schedule a final approval hearing no sooner than one hundred twenty (120) calendar days after entry of the Preliminary Approval Order. SA § 3.2.

6.      **Distribution of Settlement Payments to Settlement Class**:

a.      **Defendant provides the Settlement Administrator with the Settlement Amount**: Within thirty (30) days after the Court enters a Final Approval Order. SA §4.10(A).

b.      **Mailing of Settlement Payments to Settlement Class**: Within forty-five (45) calendar days after the Court enters the Final Approval Order. SA §4.10(B).

c.      **Final Date Settlement Class Members may cash check containing Settlement Payment**: within one-hundred eighty days (180) days of receipt by Settlement Class member. SA § 4.10(C).

7.      **Final Effective Date**: The Settlement will become final thirty (30) days after the date on which the Settlement receives final approval, no appeals are filed, and all conditions have either been satisfied or waived. SA § 1.13.

## ARGUMENT

## I.      THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT

The settlement of class/collective action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors

settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Murphy v. Hundreds Is Huge, Inc.*, No. 1:21-CV-00204-RAL, 2022 WL 2110202 (W.D. Pa. June 10, 2022) ("[T]he court encourages settlement of complex litigation that otherwise could linger for years) (*internal citations omitted*).

### A.      Legal Standard for Approval of FLSA Settlements

"When parties present to the district court a proposed [FLSA] settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Kapolka v. Anchor Drilling Fluids USA*, No. 2:18-CV-010007-NR at ECF 53 (W.D. Pa Oct. 22, 2019). *See also Solkoff v. Pa. State Univ.*, 435 F.Supp.3d 646, 652 (E.D. Pa. 2020) ("The Court will approve a settlement of FLSA claims if it settles a bona fide dispute and (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace.") (*quoting Howard v. Phila. Hous. Auth.*, 197 F.Supp.3d 773, 777 (E.D. Pa. 2016)).

To determine if a settlement agreement is reasonable and fair, "courts generally proceed in two steps, first considering whether the agreement is fair and reasonable to the plaintiff-employees and, if found to be fair and reasonable, then considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." *Dino v. Pennsylvania,* No. 08-1493, 2013 WL 4041681, at *3 (M.D. Pa Aug. 8, 2013). Even though there is a "strong presumption" in favor of class settlements, (*see Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595-96 (3d Cir. 2010)), "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement," rather, preliminary approval is appropriate where "the proposed settlement is the result of the parties' good

faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Then v. Great Arrow Builders, LLC*, No. 2:20-CV-00800 (W.D. Pa. Feb. 23, 2022).

It is undisputed that the Settlement Agreement resolves a bona fide dispute, as Defendant filed an Answer to Plaintiffs' Complaint denying Plaintiffs' claims for unpaid wages. ECF 59. Moreover, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the Settlement furthers the purposes of the FLSA by providing Collective/Class Members with substantial recovery for their unpaid wages, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. Because the settlement facilitates the purposes of the FLSA and the applicable state wage statutes, and is a fair and reasonable resolution of a bona fide dispute, it should be approved.

District courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23 because the Third Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement. As detailed below, the Settlement is fair and reasonable under Fed. R. Civ. P. 23.

**B.     Standard for Approval of Class Action Settlements**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. When a proposed class settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. Finally, there is a settlement approval or final fairness hearing. *See* Manual for Complex Litigation § 21.632-633 (4th ed. 2004).

The Third Circuit has stressed that the most relevant consideration is whether the proposed settlement is within a "range of reasonableness" in light of all costs and risks of continued litigation; that is, whether the proposed settlement is fair and reasonable under the circumstances. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 322 (3d Cir. 1998). To determine whether the settlement is fair, reasonable, and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test adopted in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which was reaffirmed in *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534-35 (3d Cir. 2004). These *Girsh* factors are:

1) The complexity, expense, and likely duration of the litigation;
2) the reaction of the class to the settlement;
3) the stage of the proceedings and the amount of discovery completed;
4) the risks of establishing liability;
5) the risks of establishing damages;
6) the risks of maintaining the class action through the trial;
7) the ability of the defendants to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 156-57. At the preliminary approval stage, a court need not address every factor. *See Gates v. Rohm & Haas Co.,* 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) ("the standard for preliminary approval is far less demanding.").

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. Manual for Complex Litigation at § 21.62; *Parks v. Portnoff Law Associates*, 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003). If the proposed settlement "falls within the range of possible approval," the Court should grant preliminary approval and authorize the Parties to give notice of the proposed settlement to the class

members. *Flores v. Eagle Diner Corp.,* No. 2:18-CV-01206-AB, 2019 WL 3943355, at *7 (E.D. Pa. Aug. 21, 2019).

Within the Third Circuit, a settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and only a small percentage of objectors and opt-outs.[3] *Galt v. Eagleville Hosp.,* 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233, n. 18 (3d Cir. 2001); *In re GMC Trucks*, 55 F.3d at 785; Manual for Complex Litigation, § 30.42 (41 Ed.). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Gaskin v. Pennsylvania*, 389 F. Supp.2d 628, 630 (E.D. Pa. 2005). *See also In Re GMC Trucks*, 55 F.3d at 785-86.

In the present case, the terms of the proposed Settlement are fundamentally fair, reasonable, and adequate, especially when considering the risk, expense, complexity, and delay associated with further litigation. *See* EPA Decl., ¶¶ 26-28. In making its determination of these risks, the Court should give deference to the opinions of Class Counsel, who have researched the issues and are familiar with the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

---

[3] As notice has not been disseminated, there are no objectors or opt-outs to the Settlement. This factor will be further address following the notice period in Plaintiffs' Motion for Final Approval.

### 1.     Complexity, Expense and Likely Duration Of The Litigation[4]

This case has been diligently litigated by both sides. Defendant was prepared to vigorously contest Plaintiffs' claim. Further, significant work has been done, including but not limited to: review of documents produced formally and informally, interviewing Plaintiffs and other fact gathering, legal research and comparison of analogous cases, analysis of payroll data and participation in two day-long mediation conferences. If the Settlement is not approved, additional litigation will be required, with no guarantee there will be any extra benefit to the Settlement Class. Indeed, given the unpredictable nature of the oil & gas industry, there is the very real possibility that had this case continued, Plaintiffs and the certified classes would have recovered far less than what the proposed Settlement provides.[5] Accordingly, this factor warrants the granting of preliminary approval of this proposed Settlement.

### 2.     Reaction of the Class to the Settlement

Notice has not yet been sent to the Class. Consequently, Settlement Class Members have not yet had the opportunity to opine on the Settlement. As such, Class Counsel will address this factor at the final fairness hearing. However, Plaintiffs Ryan Copley, Pat McGeeney, and Joe Tilley and Opt-In Plaintiff Brian Hanes support the proposed Settlement.

---

[4] While Class Counsel will fully address each of the *Girsh* factors at the Final Approval Hearing, Plaintiffs believe that a brief review of each of these factors demonstrates the propriety of granting preliminary approval.

[5] Litigation entails numerous risks. Indeed, a trial on the merits, and preparing for the same, would entail considerable expense on both sides. The result would not necessarily end the litigation, giving the right of the losing party to appeal. All of these facts weigh in favor of the Settlement. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003) (noting that the "protracted nature of class action antitrust litigation means that any recovery would be delayed for several years," and "substantial and immediate benefits" to class members favors settlement approval); *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of the class members).

### 3.      Stage of the Proceedings and the Amount of Discovery Completed

As noted above the Parties have engaged in significant discovery regarding the validity of Plaintiffs' claims and discovery focused on reaching a resolution. As part of the discovery process, Defendant produced copies of company correspondence, policies, and payroll data, allowing Plaintiffs to develop a comprehensive damage model. The Parties have also fully briefed the issue of conditional certification under the FLSA. Following the Court's conditional certification of the FLSA Collective, notice was sent to the 650 current and former employees of Defendant. 113 individuals opted-in to the action pursuant to the FLSA. The proposed Settlement is the result of arm's-length negotiations, including two mediation conferences with Ms. Katz. The participation of Ms. Katz insured that the settlement negotiations were conducted at arm's length and without collusion between the Parties. *See, e.g., Bernhard v. TD Bank, N.A.*, No. 08-cv-4392, 2009 U.S. Dist. LEXIS 92308, *5 (D.N.J. Oct. 5, 2009). Accordingly, this factor also weighs in favor of approval of the settlement. *See, e.g., Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 115 (E.D. Pa. 2005) (finding the *Girsh* factor satisfied where the parties "gained such an appreciation through their exchange of some discovery" and participation in the mediation process).

### 4.      Risks Of Establishing Liability and Damages

"These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Ikon*, 209 F.R.D. at 105 (*quoting In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 319).

In the instant matter, there is "clear evidence of the defendant's intent to reject or actual rejection of Plaintiffs' claims." *Kapolka,* No. 2:18-CV-01007-NR at ECF 53, p. 3. For example, certification of the PA Class and OH Class, as well as final certification of the FLSA Collective, and liability would all clearly be hotly contested issues. Moreover, Defendant denies any liability

based on a failure to properly pay any current or former employees, including Plaintiffs. It is Class Counsel's considered opinion that settlement on the proposed terms at this juncture in the case, given the potential downside risks, upside reward, and concomitant costs of going forward, is the most prudent course for Plaintiffs and the Settlement Class to take.

### 5.    Risks of Maintaining the Class Action Through Trial

A district court in this Circuit evaluating a settlement noted that:

> The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

(*General Motors*, 55 F.3d at 817).

While Plaintiffs believe strongly that certification of the proposed state law classes would have been granted by the Court, there was certainly cause for doubt. Plaintiffs would soon have been required to file their motion seeking Rule 23 class certification, and Defendant would have vigorously opposed such motion. The risks and expense associated with moving for class certification increases the risks of maintaining the proposed classes, and therefore supports settlement. *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (concluding that settlement was appropriate because defendants may contest class certification "thereby creating appreciable risk to the class members' potential for recovery"). These risks render settlement the most prudent course.

### 6.    Ability of Defendant to Withstand a Greater Judgment

Had the Parties not settled now, there is the possibility that Defendant's financial condition could have worsened, and Plaintiffs and the Classes could have potentially recovered significantly less or even nothing at all. Accordingly, this factor certainly counsels in favor of approval. *See,*

14

*e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 540 (D.N.J. 1997) ("There is evidence that a greater judgment likely would adversely affect Prudential's credit rating, which has already declined during these proceedings, and would, thereby, affect Prudential's ability to compete, its revenues, and its profitability."), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Thus, this factor weighs in favor of preliminary approval.

### 7.   Range Of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *General Motors*, 55 F.3d at 806. In *General Motors*, the Third Circuit further explained:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id. (citation omitted.)*.

As previously discussed, the proposed Settlement confers a substantial benefit on the Class. In fact, the proposed settlement represents approximately 80% recovery of back wages due to Defendant's alleged improper compensation practices. EPA Decl., ¶ 37. Furthermore, the average recovery for Collective/Class Members is approximately $13,000 and $5,900 respectively. *Id.* at ¶¶ 43-44. This is an excellent result for the Collective/Class, especially when compared to the recovery in other wage and hour cases. *See, e.g., Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2021 WL 720359, at *3 (M.D. Pa. Feb. 24, 2021) (approving settlement that the parties estimated "may yield an average recovery for FLSA collective members of $3,627.05."); *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 657 (E.D. Pa. 2020)

(Approving settlement accounting for 71% of total claimed damages, and holding that "courts in this district have approved FLSA settlements that are about 70% of the claimed damages in similar circumstances"); *Layer v. Trinity Health Corp.,* No. 2:18-CV-02358 at ECF 47 (E.D. Pa May 31, 2019) (approving settlement under which net payments to class "represent more than 27% of the…potential overtime wages owed under the FLSA/PMWA," and each class member that collected money under the settlement received between 15% to 45% each "of their possible unpaid overtime pay."); *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 495 (E.D. Pa. 2018) (approving FLSA class settlement accounting for "approximately 62.5% of the maximum total compensatory damages."); *Arrington v. Optimum Healthcare IT, LLC.*, No. CV 17-3950, 2018 WL 5631625, at *8 (E.D. Pa. Oct. 31, 2018) (approving class settlement where "the Class Members will receive approximately 68% of their actual damages."); *Devlin v. Ferrandino & Son, Inc.*, No. CV 15-4976, 2016 WL 7178338, at *6 (E.D. Pa. Dec. 9, 2016) (approving settlement representing significant amount of "unliquidated, unpaid overtime wages Plaintiffs calculated were owed to Settlement Class Members."); *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (approving gross average recovery of approximately $2,500 per class member, which will amount to approximately $1,600 after deducting fees and expenses); *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *10-11 (M.D. Pa. Jan. 7, 2013) (recovering $1,845 per participant); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) ("Total settlements with all defendant[s] represent approximately 55 percent of total damages for the limitations period.").

Comparisons to similar cases have been found helpful in determining whether the proposed settlement is fair, reasonable, and adequate. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011) ("the Court recognized in its order preliminarily approving the settlement that

comparison of settlements in similar cases is relevant to whether a settlement is fair, adequate and reasonable.") (*internal quotation omitted*). Consequently, based on analogous settlements in other similar cases approving settlements on the basis that they constitute a substantial percentage of the potential recovery for the class, preliminary approval is warranted.

## II.   THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS

Under the Agreement, Defendant has agreed to pay a Settlement Amount of $2,550,000, out of which Settlement Class members will be paid based on the number of hours worked during the Class Period. The portion of the Settlement Fund that will be used to compensate Collective/Class members represents approximately 80% of the value of the allegedly unpaid wages for Plaintiffs and the Collective/Class Members. *See* EPA Decl., ¶ 37. The precise amount received by each Settlement Class member will be determined after all Court awarded fees and expenses are deducted. As described above, each Settlement Class member will receive a portion of the Settlement Amount based on the amount of alleged damages they specifically incurred (*e.g.*, the number of hours they worked). *Id.* at ¶ 45.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiffs. Plaintiffs and Precertification Opt-In Plaintiff Hanes, are instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contributions they each have made to the prosecution of this litigation, including the burden and risks associated with bringing this action publicly, as well as in recognition of the time they each expended in furtherance of the class (*e.g.*, providing background information on Defendant's employment practices, attending two settlement conferences, conferring with Class Counsel during the settlement negotiations).

Courts in this Circuit regularly approve incentive payments in class/collective action suits settling claims under the FLSA, PMWA, and OMFWSA when such awards are authorized by the

17

settlement and disclosed in the class notice. *See, e.g., Acevedo v. BrightView Landscapes, LLC*, No. 3:13-2529, 2017 WL 4354809, at *2-3 (M.D. Pa. Oct. 2, 2017) (approving $5,000 to named plaintiff and $1,000 each to five opt-in plaintiffs); *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *8 (E.D. Pa. Sep. 27, 2017) (approving payment of $48,500 to 11 plaintiffs); *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *11 (E.D. Pa. Dec. 9, 2016) (payment of $7,500 to each named plaintiff and $1,000 to each opt-in plaintiff); *Schaub v. Chesapeake & Del. Brewing Holdings*, No. 16-756, 2016 WL 9776070, at *5 (E.D. Pa. Nov. 14, 2016) (approving service payment of $9,000 to named plaintiff); *Kotchmar v. Movie Tavern Partners, LP, et al.*, No. 15-cv-04061 (E.D. Pa. 2016) (approved service payment of $5,000 to named plaintiff).

The Parties have agreed that Plaintiffs' counsel will petition the Court for Service Payments to Plaintiffs Ryan Copley, Pat McGeeney, and Joe Tilley of $10,000 each, and a Service Payment to Precertification Opt-In Plaintiff Brian Hanes of $5,000. Defendant has agreed not to object to these requested Service Payments. *See* EPA Decl., ¶ 49.

Pursuant to the proposed Settlement Agreement, prior to a final approval hearing, Class Counsel will file a motion seeking an amount not to exceed 35 percent of the Settlement Amount as a fee award, plus reimbursement of all reasonable litigation expenses incurred. SA § 4.14(A). The percentage-of-recovery method, which awards a fixed portion of the settlement fund to counsel, is the prevailing methodology used by courts in the Third Circuit in wage and hour cases. *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016). "The court is required to thoroughly review the reasonableness of attorneys' fees in all class action settlements." *Bonett v. Educ. Debt Servs.*, No. 01-cv-6528, 2003 WL 2168267, at *8 (E.D. Pa. May 9, 2003).

Here, an award of 35 percent of the Settlement Amount is reasonable. "[C]ourts have approved attorneys' fees in FLSA settlement agreements 'from roughly 20-45%' of the settlement fund." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 534 (E.D. Pa. 2016) (*quoting Mabry v. Hildebrant*, No. 14-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2014) (*collecting cases*)). "In [Third Circuit], the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Kapolka v. Anchor Drilling Fluids USA* LLC, No. 2:18-CV-01007-NR (W.D. Pa Oct. 22, 2019) (*citing Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *see also Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *18 ("[C]ourts have approved attorneys' fees in FLSA collective and class action settlement agreements 'from roughly 20-45%' of the settlement fund."). Courts within this district have routinely granted fees in excess of 30% in common fund settlements of hybrid wage claims. *See, e.g., Tompkins*, 2017 U.S. Dist. LEXIS 158478, at *28 (noting "Plaintiffs' request for a slightly higher figure of 35% is reasonable."); *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 U.S. Dist. LEXIS 158479, at *30 (E.D. Pa. Sep. 26, 2017) (awarding a percentage of 33% of common fund).

Most importantly, Class Counsel's intent to seek up to 35 percent of the Settlement Amount in fees and for reimbursed expenses is plainly documented in the proposed Class Notice. As such, Class Counsel will be fully prepared to substantiate their fee request at the final approval hearing, after Settlement Class Members have had an opportunity to opine on the propriety of Class Counsel's request.

## III.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

Plaintiffs request that the Court certify the following proposed class for settlement purposes only, pursuant to the Settlement Agreement:

A.      **Rule 23(a) requirements are satisfied here**

In order to certify a class under Rule 23, a named plaintiff must establish that the class

meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representatives parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R CIV. P. 23(a); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140-141 (3d Cir. 1998);

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308-09 (3d Cir.

1998) ("Prudential II"). These four elements are referred to in the short-hand as (1) numerosity,

(2) commonality, (3) typicality, and (4) adequacy of representation. *In re Corel Corp. Secs. Litig.*,

206 F.R.D. 533, 539 (E.D. Pa. 2002). Here, all four elements are satisfied for purposes of certifying

the proposed Settlement Class.

1.      **Rule 23(a)(1) – Numerosity**

The proposed Settlement Class is sufficiently numerous. Rule 23(a)(1) requires that the

Class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. This Court

has held that a "class does not need a magic number of claimants" nor must the [plaintiffs] allege

the exact number or identity of the class members." *Cohen v. Chi Title Ins. Co.*, 242 F.R.D. 295,

299 (E.D. Pa. 2007); *see also Gates v. Rohm & Haas*, 265 F.R.D. 208, 215 (E.D. Pa. 2010) (the

threshold is approximately 40 class members); *See Jackson v. Southeastern Pennsylvania Trans.

Auth.*, 269 F.R.D. 168, 185 (E.D. Pa. 2009) ("it is proper for the court to accept common sense

assumptions in order to support a finding of numerosity"); *Stewart v. Abraham*, 275 F.3d 220, 226-

27 (3d Cir. 2001). Here, the number of Collective/Class Members in the proposed Settlement Class

consists of approximately 268 individuals. EPA Decl., ¶ 58. The numerosity requirement is therefore satisfied.

### 2.      Rule 23(a)(2) – Commonality

The Settlement Class also satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-2551 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2548, 2551; *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000).

A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 530 (*quotation omitted*); *Prudential II*, 148 F.3d at 310; *Baby Neal*, 43 F.3d at 56 (finding "[f]actual differences among the claims of the putative class members do not defeat certification"). "Commonality will not be defeated simply because 'individual facts and circumstances' are important to the resolution of class members' claims." *Contawe v. Crescent Heights of Am., Inc.*, No. 04-cv-2304, 2004 WL 2966931, at *2 (E.D. Pa. Dec. 21, 2004) (*citing Baby Neal*, 43 F.3d at 57). A single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See id.; see also* 1 A. Conte & H. Newberg, *Newberg on Class Actions (Fourth)*, § 3.10 at 272-74 (2002).

Here, commonality exists because the Settlement Class Members' claims are predicated on core common issues, including whether Defendant improperly compensated Plaintiffs and the Collective/Class Members for time spent traveling from their home communities to the employer-controlled housing at each remote work location prior to the beginning of each hitch and returning back to their homes at the end of each hitch, and traveling between the employer-controlled housing and the remote work locations each day, during which the employees often engaged in work-related activities. Defendant vigorously denies each allegation and maintains that each and every employee, including Plaintiffs, was properly paid at all times.

### 3.    Rule 23(a)(3) – Typicality

The typicality requirement is met. Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal*, 43 F.3d at 57. A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See, e.g., Ikon Office Solutions, Inc. Litig.*, 191 F.R.D. at 463; *In re Centocor Secs. Litig. III.*, 1999 U.S. Dist. LEXIS 1224, at *6 (noting that typicality requirement of Rule 23(a)(3) is satisfied where "litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members"); *see also SEPTA. v. Orrstown Fin. Servs., Inc.*, No. 12-cv-0993, 2012 U.S. Dist. LEXIS 116937, at *8 (M.D. Pa. Aug. 20, 2012).

Further, "typicality, as with commonality, does not require that all putative class members share identical claims." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531–32 (3d Cir. 2004). One district court in this Circuit aptly noted in granting class certification to a PMWA claim, "the principal questions presented by the suit go to [defendant's] corporate policies. The

controversy here is whether those policies violate the PMWA and whether those policies were applied to Plaintiff and other potential class members." *Soles v. Zartman Constr., Inc.*, No. 13-cv-29 (M.D. Pa. July 18, 2014). Here, Plaintiffs' claims arose from a common course of conduct by Defendant allegedly failing to properly compensate employees for time spent traveling and engaging in work-related activities. As such, the Plaintiffs' claims are typical of the claims of Members of the proposed Settlement Class.

### 4.      Rule 23(a)(4) – Adequacy

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).

Under the first prong, the Court determines whether Plaintiffs have interests antagonistic to those of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4) based upon factors set forth in Rule 23(g). *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007); *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Here, adequacy is readily met, and Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Mr. Copley, Mr. McGeeney, Mr. Tilley, and Mr. Hanes hold Defendant accountable for, among other things, allegedly failing to pay its rotational non-exempt employees wages, including overtime wages, for all hours worked. Further, Plaintiffs have demonstrated their loyalty

and commitment to this litigation by reviewing the pleadings, meeting with Class Counsel, and producing written discovery. As such, Plaintiffs' interests are perfectly aligned with the interests of the absent Settlement Class Members, thereby meeting the first adequacy prong.

Second, as discussed in greater detail below, Plaintiffs' Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—specifically including wage and hour actions. Moreover, in the Third Circuit, the competency of class counsel is presumed and defendants carry the burden of proving the inadequacy of counsel. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233, n. 18 (3d Cir. 2001). Here, Defendant does not oppose Plaintiffs' request for the Court to appoint their counsel of record as Class Counsel. Accordingly, the adequacy requirement is satisfied.

### B. The Proposed Settlement Class Should Be Certified Under Rule 23(b)

Having demonstrated that each of the mandatory requirements of Rule 23(a) are met for settlement purposes only, Plaintiffs now turn to consideration of the factors that independently justify class treatment of this action under Rule 23(b)(3)—predominance and superiority. Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997). Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 148 F.3d at 316. Here, Plaintiffs readily meet both requirements.

First, common questions of law and fact readily predominate. When common issues present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative basis rather than on an individual basis. *Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied*, 534 U.S. 973 (2001). Class and Collective Members' claims arise out of Defendant's alleged policies and procedures. Plaintiffs allege that Defendant's practices did not vary with regard to individual Settlement Class Members. Additionally, Settlement Class Members' claims seek remedy of "common legal grievances"–namely, straight wages and overtime wages for all hours worked. It is Plaintiffs' position that this presents common operative facts and common questions of law that predominate over any factual variations.

Second, a Rule 23 certification of the Settlement Class, in the context of settlement, is also "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23. Absent class certification here, many putative Settlement Class Members would go uncompensated for Defendant's alleged wrongdoing. *See e.g.*, *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016), as amended (May 2, 2016) (finding superiority where individual proceedings "would result in years of costly litigation and multiple appeals, all the while delaying any potential recovery."). Requiring all of Defendant's rotational non-exempt employees to file individual lawsuits would waste judicial resources because each lawsuit would likely involve the same evidence concerning Defendant's alleged wrongdoing. Resolving the Settlement Class Members' claims in a single, consolidated settlement proceeding is superior to individual adjudication of their claims.

The Settlement Agreement provides the Settlement Class Members with an ability to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great

uncertainty, risk, and costs, and provides no guarantee that any injured Settlement Class Member will obtain necessary and timely relief at the conclusion of the litigation process. The proposed Settlement would also relieve judicial burdens that would be caused by adjudication of the same issues. Further, strictly for settlement purposes only, Defendant does not oppose Rule 23 class certification of the Settlement Class.

Finally, as set forth in the Settlement Agreement, only Settlement Class members will be deemed to have released their claims under the FLSA. The Class Notice apprises the Settlement Class Members of this provision and the Claim Form states in full the releases contained in the Settlement Agreement. Accordingly, the Court should enter an order certifying the Settlement Class, for settlement purposes only.

### C. The Release of FLSA Claims is Appropriate

As set forth in detail in the proposed Settlement Agreement, and described in the proposed Notice, only members of the FLSA Collective will release their FLSA claims against Defendant. Such a release is entirely permissible as Section 216(b) only speaks to an action being maintained by individuals who file consent to sue forms with the court; it does not address the scope of any potential release of FLSA claims. *See,* 29 U.S.C. § 216(b).

## IV. THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . .." Manual for Complex Litigation, §21.312. The notice of the proposed Settlement "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997). Here, the

26

form and method of notice plainly satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1). "Notice by mail provides such 'individual notice to all members' in accordance with Rule 23(c)(2), and where the names and addresses of the class members are easily ascertainable, individual notice through the mail is 'clearly the 'best notice practical.'" *Fein*, 2017 U.S. Dist. LEXIS 158479, at *16 (*citing Eisen v. Carlisle & Jacquelin*, 7 U.S. 156, 173-75 (1974)).

This "Notice Plan" (including, *inter alia*, direct mailing and website publication) is intended to fully inform Settlement Class members of the Action, the proposed Settlement, and the information they need to make informed decisions about their rights. Indeed, the Class Notice is wholly consistent with Rule 23, as it will adequately advise Class and Collective Members of: (i) the essential terms of the Settlement, including how to make a claim for a portion of the Settlement's proceeds; (ii) their rights with respect to the Settlement, including their right to object; (iii) detailed information regarding the identities of the Released Parties and the Released Claims; (iv) information about the date of the Final Approval Hearing; (v) information regarding Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses; and (vi) the proposed Service Payment for the Plaintiffs and Precertification Opt-In Plaintiff Hanes.

Accordingly, this Court should approve the form of notice and the method of publication that Plaintiffs propose as they satisfy the due process requirements of Fed. R. Civ. P. 23.

## V.     LYNCH CARPENTER LLP SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT COLLECTIVE/CLASS

Rule 23(a)'s fourth requirement is that "[t]he representative parties will fairly and adequately protect the interests of the class." The adequacy requirement seeks first to "test[] the qualifications of the counsel to represent the class" and second to "uncover conflicts of interest

27

between named parties and the class they seek to represent." *Prudential*, 148 F.3d at 312. Both prongs are met in this case.

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel—Lynch Carpenter LLP—easily meet the requirements of Rule 23(g). Class Counsel's work in this case on behalf of the Plaintiffs and the proposed Class has been substantial. They have devoted substantial time and resources to the case, including: (i) developing the factual basis of the claims; (ii) preparing a detailed and thorough Complaint, as well as two Amended Complaints (iii) conducting formal discovery; (iv) participating in mediation sessions; and (v) engaging in hard-fought and ultimately successful settlement negotiations with Defendant. Additionally, Class Counsel have substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted here. See EPA Decl., ¶¶ 67-71. Class Counsel's extensive efforts in prosecuting this case together with their background and experience in FLSA litigation satisfy the requirements of Rule 23(g). Defendant does not dispute Class Counsel's qualifications. Based on the foregoing, this Court should appoint Lynch Carpenter LLP as Class Counsel.

## CONCLUSION

The proposed Settlement provides a fair, reasonable, and adequate award to Plaintiffs and the proposed Settlement Class, and puts an end to this Action. Accordingly, preliminary approval should be granted, and the Class Notice approved. Finally, the proposed class satisfies the requirements of Rules 23(a) and Rule 23(b)(3), and should be certified as a settlement class. For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) certify, for settlement purposes only, Plaintiffs' claims pursuant to Fed. R. Civ. P. 23(b)(3); (3) order that the present litigation be stayed pending the Court's decision on final

approval of the Settlement or either Party's termination of the Settlement pursuant to the provisions of the Settlement Agreement; (4) approve the proposed claims process, incorporated in the proposed class notice; (5) approve and authorize the mailing of the Class Notice; and (6) set a date for a Final Approval Hearing.

Dated: January 5, 2023                          Respectfully Submitted,

                                                */s/  Elizabeth Pollock-Avery*
                                                Edwin J. Kilpela, Jr.
                                                Elizabeth Pollock-Avery
                                                Kenneth A. Held
                                                ekilpela@lcllp.com
                                                elizabeth@lcllp.com
                                                ken@lcllp.com
                                                **LYNCH CARPENTER, LLP**
                                                1133 Penn Avenue, 5th Floor
                                                Pittsburgh, PA 15221
                                                T (412) 322-9243
                                                F (412) 231-0246

                                                ***Counsel to Plaintiffs***